## ESTATE OF ANGELIA R. SCOTT, DECEASED.

[No. 19,473; decided Jan. 14, 1903.]

**Wills—Implied Revocation by Codicil.**—When a new will is made in the form of a codicil, it does not require an express revocation to make the intent to revoke the prior will clear; it is sufficient that the intent to make a disposition of the estate in the new instrument, which is inconsistent with the prior gifts, is made as clear as the original.

**Wills—Meaning of "Residue" or "Residuum."**—Residue or residuum, technically, is the remainder or that which remains after taking away a part; in a will, such portion of the estate as is left after paying the charges, debts, devises, and legacies; and the presumption is that the testatrix used it in that sense, unless a contrary intention clearly appears.

**Wills—Meaning of Residue, How Determined.**—Where a will is drawn for a testatrix by an attorney, the word "residue," as used in the instrument, will be taken technically, and no resort can be had to artificial aid in its interpretation when natural reason and the circumstances of its insertion make clear its meaning.

**Wills—Revocation by Codicil Which Omits Legatee.**—In this case the codicil of the testatrix, which in effect was a new will, omitted one of the residuary legatees named in the original will. The court found that the codicil was inconsistent and irreconcilable with, and worked the revocation of, the original will in respect to this bequest, and therefore denied the right of the legatee to participate in the distribution of the residuum.

Application for partial distribution by Eugene Wormell.

L. Seidenberg and R. P. Clement, for applicant.

Galpin and Bolton, Houghton & Houghton, contra.

COFFEY, J.    Whether or not Eugene Wormell is entitled to relief in this proceeding is dependent upon the discovery of the intent of the testatrix as expressed in her will and codicils or deduced therefrom by process of construction as matter of law.

To understand the question the instruments should be presented in full, and they are as follows:

"IN THE NAME OF GOD, AMEN. I, Angelia R. Scott, of the City and County of San Francisco, State of California, being of sound and disposing mind and memory, do make, publish and declare this my last will and testament.

"I. I give, devise and bequeath to the officers of Apollo Lodge of the Independent Order of Odd Fellows in the City and County of San Francisco, and by their successors in office, the sum of Two Thousand (2,000) Dollars, to be by them invested and the proceeds thereof to be used in the preservation and care of the cemetery lots in the Odd Fellows Cemetery in the City and County of San Francisco, in which my late husband, Salvin P. Collins, and my nephew, John Quincy Wormell, are buried.

"II. I give, devise, and bequeath to Horatio Stebbins the sum of Three Thousand (3,000) Dollars, to be used by him at his discretion to advance the interests of the First Unitarian Church in this City and County.

"III. I give, devise, and bequeath to Carl Anderson, my coachman, who has served me faithfully for five years, Five Hundred (500) Dollars.

"IV. I give, devise, and bequeath my diamond earrings, one bar pin with one diamond, my finger ring set with three large diamonds, my chain and charms to my niece, Helen Garish, and my watch to my niece, Ella Perkins.

"V. I give, devise, and bequeath my cluster diamond ring and one small solitaire diamond ring, the gift of my late husband, S. P. Collins, to his sister, Mrs. Rachel Johonnot.

"VI. I give, devise and bequeath one diamond solitaire finger ring to Mrs. Frank Garcia, wife of my nephew, Frank Garcia.

"VII. I give, devise and bequeath all the rest and residue of my property as follows: One fiftieth thereof to each of the following persons, children of my late brother, Amos P. Wormell, namely: One fiftieth to Andrew Wormell of Dover, New Hampshire; one-fiftieth to Charles Wormell, of Sunbury, Ohio; one-fiftieth to William Wormell of the same place; one-fiftieth to Eugene Wormell of Livermore, Maine; one-fiftieth to Lettie Wormell of Colorado, and one-fiftieth to Salvin Ulysses Wormell of Phillips, Maine;

two-fiftieths thereof to Louisa E. Roe, daughter of my late brother, Amos P. Wormell, of Island Pond, Vermont; six-fiftieths thereof to my sister Mary A. Cowan and her daughter Amanda Meily, share and share alike; six-fiftieths thereof to M. S. Chamberlain, nephew of my late husband, S. P. Collins, now residing at Concord, New Hampshire; one-fiftieth thereof to Mrs. Rachel Johonnot, sister of my late husband, residing at Montpelier, Vermont; one-fiftieth thereof to Florence Swall, wife of George Swall of Mountain View, California, niece of S. P. Collins, deceased; one-fiftieth thereof to Eugene Wormell, son of my brother, Nathaniel Wormell, now residing at Seattle, Washington; one-eighth to my nephew, Frank Garcia; one-eighth to my niece Helen Gerrish, wife of Charles Gerrish of Port Townsend, Washington; one-eighth thereof to Mrs. Ella Perkins, of Santa Clara County, California, wife of Caleb F. Perkins; one-tenth thereof to Mrs. Louisa Garcia, my sister; and one-fortieth thereof to Chester and Nellie Swall, son and daughter of George and Florence Swall of Mountain View, California, share and share alike, two-fiftieths thereof to my husband, E. W. Scott.

"In case any of my legatees contest the probate of this will, I, hereby revoke the legacy of such contestant, and direct that such legacy become a part of my estate.

"VIII.   I nominate and appoint Charles S. Tilton, Caleb P. Perkins, and Frank Garcia, Jr., as executors of this my last Will and Testament without bonds.

"In Testimony Whereof, I have made, published and declared the foregoing as my last Will and Testament.

"ANGELIA R. SCOTT. (Seal.)

"Signed, sealed, published and declared to be her last Will and Testament by the aforesaid Angelia R. Scott, in our presence, who in her presence and in the presence of each of us, and at her request have hereto set our hands and seals, as witnesses this seventh day of November, A. D. 1891.

"JACOB C. JOHNSON, 1519 Van Ness Ave.
"EDWARD H. HORTON, 30 Post Street.

"Whereas, I, Angelia R. Scott, by my will subscribed on the 7th day of November, 1891, appointed Caleb F. Perkins

together with Charles S. Tilton and Frank Garcia, Jr., to be executors of my last Will and Testament.

"Now, then, I hereby revoke the nomination and appointment of said Perkins as one of my said executors, and it is my desire that this Codicil be annexed to and made a part of my last Will and Testament as aforesaid to all intents and purposes.                    ANGELIA R. SCOTT.

"Signed, sealed, published and declared to be and as and for a codicil to her last Will and Testament by Angelia R. Scott, in our presence, who in her presence, and in the presence of each of us and at her request have hereto set our hands and seals as witnesses this 25th day of February, A. D. 1892.                    "J. C. JOHNSON,
                    "E. H. HORTON.

"Whereas, I, Angelia R. Scott, of the City and County of San Francisco, have made my last Will and Testament in writing, bearing date the seventh day of November, in the year of our Lord, one thousand, eight hundred and ninety-one, in and by which I give and bequeath to my sister, Mary A. Cowan and her daughter, Amanda Meily, six-fiftieths of the residue of my estate (after providing for certain legacies) to be divided share and share alike between them, and whereas, since then said Mary A. Cowan has died, and I desire to revoke so much of said Will as devises six-fiftieths to her and to her daughter Amanda Meily.

"And Whereas, by the same instrument, I have devised one-fiftieth of said residue to Florence Swall, wife of George Swall of Mountain View, and since that time said Florence has died, leaving three children; and whereas I also devised to Eugene Wormell, son of my brother, Nathaniel Wormell, residing at Seattle, Washington, one-fiftieth part of said residue, and since then he has died; and whereas, I also desire to change the devise to Frank Garcia, of one-eighth of my estate, and to decrease the amount thereof and whereas, I did devise one-eighth of my said estate to Helen Garish, wife of Charles Garish; and I desire to increase the amount devised to her; and whereas, I did devise one-eighth of the residue of my said estate to my niece Ella Perkins, I now desire to devise something to her four children; and whereas, I

now desire to make a bequest to the Old People's Home of San Francisco, and to the three children of my present husband, E. W. Scott; and whereas, I desire to revoke the gift of two thousand dollars to the Apollo Lodge of the Independent Order of Odd Fellows, and desiring to preserve the general features of my former will making new distributions when necessary by deaths which have happened since the making of that will, I prefer to do this by way of another codicil to my former Will instead of executing a new Will; but in any respect in which this codicil shall conflict with the provisions of my former Will, I fully intend that this codicil shall control the provisions of the former Will, and that otherwise the former Will and the codicil thereof shall stand unaffected by it.

"I revoke the bequest I made in my said Will of Two Thousand Dollars to the Apollo Lodge of the Independent Order of Odd Fellows, and I give, devise and bequeath Two Thousand Dollars to the Apollo Lodge of the Independent Order of Odd Fellows in the City and County of San Francisco, and I request them to take care of my cemetery lot in the Odd Fellows Cemetery in this City and County of San Francisco.

"I give, devise and bequeath the sum of One Dollar to each of the following persons: To Mrs. Amanda Meily, daughter of Mary A. Cowan; to Mrs. Nellie Swall, wife of George Swall; to Mrs. Eliza Paisley, wife of Donald Paisley, sister of my late husband.

"I give, devise and bequeath to my maid, Estella Burnham, Five Hundred Dollars, if she is in my employment down to the time of my decease.

"I give, devise and bequeath my emerald finger ring set with diamonds, and also my large solitaire diamond finger ring to Mrs. Helen Garish.

"I give, devise and bequeath all the rest and residue of my estate subject to all unrevoked legacies and bequests of my Will, and subject to those herein contained as follows:

"Of such residue, two-fiftieths thereof to my nephew, Andrew Wormell of Dover, New Hampshire.

"Two-fiftieths thereof to Charles Wormell, of Sunbury, Ohio.

"Two-fiftieths thereof to my nephew, William Wormell of the same place.

"Two-fiftieths thereof to my nephew, Salvin Ulysses Wormell, of Phillips, Maine.

"Three-fiftieths thereof to my niece, Louisa E. Roe, of Island Pond, Vermont, daughter of my brother, Amos P. Wormell.

"One-fiftieth thereof to Lulu Wormell, of Oakland, daughter of my nephew Eugene Wormell, now deceased.

"Six-fiftieths thereof to Mortimer S. Chamberlain, residing at Concord, New Hampshire, nephew of my late husband, S. P. Collins.

"Three-fiftieths thereof to Mrs. Rachel Johonnet, sister of my late husband, S. P. Collins.

"Three-fiftieths thereof to Ella Perkins, of Santa Clara County, wife of C. F. Perkins.

"Three-fiftieths thereof to be divided share and share alike between the four children of said Ella Perkins, or the survivors of them at my decease.

"Seven-fiftieths thereof to Helen Garish, my niece, wife of Charles Garish of Port Townsend, Washington.

"Four-fiftieths thereof to my sister, Mrs. Louisa Garcia, wife of Frank Garcia (senior).

"Three-fiftieths thereof to be divided share and share alike between the children, now living or the survivor of them, at my death, of Florence Swall, and George Swall, of Mountain View, California; said Florence Swall being a niece of my late husband, S. P. Collins.

"Four-fiftieths thereof to Frank Garcia, Jr., son of Frank Garcia.

"Two-fiftieths thereof to my husband, E. W. Scott.

"One-fiftieth thereof to Lloyd N. Scott, for himself, for his brother, Wesley B. Scott, and his sister, Laura May Scott, share and share alike; but he is to receive and hold in trust the shares of Wesley R. Scott and Laura B. Scott, invest the same, and use the income or principal, if necessary, for their education and support until both beneficiaries shall die or become of age; and in case of the death of either beneficiary the share of such decedent shall be divided equally between

the survivors, unless decedent leaves issue him or her surviving, and in that event the share of said decedent shall go to said issue.

"One-fiftieth thereof to the Old People's Home of San Francisco.

"One-fiftieth thereof to the San Francisco Protestant Orphan Asylum.

"And in case any of my devisees or legatees shall contest the probate of this Will the bequest or devise to them is hereby revoked, and the amount bequeathed or devised to such contestant shall go back and become a part of my estate, and be divided pro rata among the residuary devisees.

"I also nominate and appoint Charles Garish to be another executor of my estate.

"I also revoke the bequest of my one large solitaire diamond finger ring to Mrs. Frank Garcia, formerly wife of, Frank Garcia, Jr., and I give, devise and bequeath the same to Helen Garish.

"(Seal)    ANGELIA R. SCOTT.

"Signed, sealed and published and declared to be and as and for a codicil to her last Will and Testament by Angelia R. Scott in our presence, who in her presence and in the presence of each of us and at her request, have hereto set our hands and seals as witnesses this 22d day of October, A. D. 1897.

"JACOB C. JOHNSON, 1519 Van Ness Ave.
"EDWARD H. HORTON, 2110 Devisadero St.
"PHILIP G. GALPIN, 1738 Broadway."

The general scheme of testatrix in the will was preserved in the codicil, which declares that she desired to preserve the general features of her former will, making new distributions made necessary by deaths occurring since its execution; that she preferred to do this by way of another codicil of her former will instead of executing a new will, but in any respect in which the last executed document should conflict with the first she declared her intent that the codicil should control, but otherwise the former should stand unaffected.

Now the question is, Are the provisions of this codicil which omit any allusion to Eugene Wormell consistent with

the claim upon his part that she did not design to revoke her bequest to him? This codicil is, in effect, a new will. Testatrix declared that for reasons she preferred to make a new will in the form of a codicil, and we should construe it in that view.

The general features of the old instrument are preserved, but the dispositions are somewhat varied.

In each case she divided the residuum into fractions, but in the original will the parts were not symmetrically segregated, while in the codicil they were divided into fiftieths. This plan is perfectly plain, and by keeping it in mind any difficulty in divining her design will disappear. It does not require an express revocation to make the intent to revoke clear; it is sufficient that the intent to make a disposition of the estate in the new instrument which is inconsistent with the prior gifts is made as clear as the original.

Counsel for petitioners quote the decision in Re Ladd, 94 Cal. 674, that a codicil is never construed to disturb the dispositions of the will further than is absolutely necessary to give effect to the codicil, and that a clear disposition made by the will is not revoked by a doubtful expression or inconsistent disposition in a codicil, and, taking this expression of the court in connection with section 1321 of the Civil Code, counsel deduces this truth.

In order to revoke a clear disposition in a will, the codicil must contain a provision that is not simply inconsistent, but one that is absolutely irreconcilable, with the disposition in the will.

Such a condition, counsel contend, is not presented by the case at bar, for the dispositions are not even inconsistent let alone irreconcilable.

Is it evident, as counsel contend, even upon the most casual consideration, that in this case there is no absolute necessity, nor any necessity, to disturb the bequest in the will to petitioner, in order to give effect to the codicil, and that, therefore, it must stand?

If this were as patent to the court as to the counsel, there would be no hesitancy in determining the issue in their favor, but that there is some lingering doubt in the mind of counsel as to the validity of their position is suggested

by their appeal to equity in one of their earlier briefs, in which they claim that there is no difficulty in carrying out the provisions of the will and codicil, for it is only necessary to ascertain the value of the estate after the payment of debts, expenses of administration and providing for the unrevoked general and specific bequest of the will, then deduct two-fiftieths, one for the petitioner and the other for the children of Lettie Wormell Byron, and the remainder constitutes the residue disposed of by the codicil and makes the petitioner substantially a general legatee under the will of an amount equaling one-fiftieth of the estate after the payment of debts, expenses of administration, and the payment of the other unrevoked general and specific legacies under the will, there being no reason why, in this manner, the petitioner may not receive the share given in the original will; "but if this cannot be done, it is certainly within the equitable powers of the court to let the petitioner in to share equitably in the residue under the codicil, it being clear that it was the intention of the testatrix not to annul or impair the legacy given in the will." All the grounds urged for Eugene Wormell apply with equal force to the Byron children. This court has no equitable power in the premises, and it is not clear that the omission of this Eugene Wormell and the children of Lettie Wormell Byron was an oversight of testatrix.

There is no room for the suggestion of an alternative. It is no case of equity. It is a matter for interpretation and construction; it is for the court to find out the sense in which the testatrix employed certain words; that is, the idea which she intended to convey by the use of certain expressions or terms, and to draw from the whole text a conclusion which shall construe the intent of the maker of the instrument. The object is not to make or mar or modify the testament, but to discover its sense; hence, the whole document is to be construed integrally. There is no case here for extrinsic evidence; and, consequently, the intimation of oversight must be resolved without recourse to that species of proof.

In their final brief counsel for Eugene Wormell repeat their suggestion of an alternative, but rely upon their primary proposition that petitioner has a clear right to the

legacy in the will, and that in her readjustment of the bequests in the codicil his name was omitted through oversight.

Counsel do not persist in the contention that there may be two residues, one for one purpose and another for another, but insist that they have consistently adhered to the position that there is only one residue to deal with; but they assert that the language of the codicil shows clearly that the testatrix used the word "residue" without understanding its exact meaning; that evidently the testatrix, in using this term in the codicil, had in mind not a residue in its technical, legal sense, but simply the remainder of her estate after the payment of debts and expenses of administration.

Residue or residuum, technically, is the remainder or that which remains after taking away a part; in a will, such portion of the estate as is left after paying the charges, debts, devises, and legacies, and the presumption is that the testatrix used it in this sense, and a contrary intention must clearly appear.

Considering the circumstances in which the codicil came into existence, it is hardly just to impute ignorance of the meaning of the word or lack of understanding of its legal import to testatrix. It was drawn, according to the record in the contest, by one of the counsel for respondent here (Mr. Galpin) from the instruction given to him by her; she gave the details of the devises and legacies, and he prepared the paper at her direction. If it were an instrument written by herself without legal assistance, there might be some reason in which to intimate her ignorance of the technical term, but that may not be done with impunity where there was a skilled draughtsman and expert lawyer.

The word "residue," therefore, is to be taken technically, and no resort can be had to artificial aid in its interpretation when natural reason and the circumstances of its insertion make clear its meaning.

Counsel for Eugene Wormell argued that the purpose of testatrix clearly was to have paid out of that remainder all unrevoked legacies and bequests of her will and general legacies and bequests of the codicil, to which, in terms, the so-called "residue" in the mind of the testatrix was made

subject; then to have two-fiftieths of the remainder paid to
Eugene Wormell and Lettie Wormell Byron, and then to
dispose of the remainder, which would constitute the real
residue, in fiftieths; and, counsel continue in this strain,
that if all of this estate were reduced to cash, and all debts
and expenses of administration paid, it would be in exact
conformity with the codicil to pay, out of what remained,
the unrevoked legacies and bequests of the will, and the
general and specific legacies of the codicil, then to pay two-
fiftieths of what remained, one to the petitioner and one to
the children of Lettie Wormell Byron, and to distribute the
remainder, which would constitute the actual residue of the
codicil, in fiftieths; and counsel confess their entire inability
to see how this simple course of carrying out what strikes
them as the unmistakable intention and purpose of the tes-
tatrix would make two residues, which, it appears to be ad-
mitted, are repugnant to the law, if possible to mathematics.

This simple device would also, it is said, eliminate the
need of the assumption of any equitable authority by the
court, as such division would be plainly in pursuance of
the plan adopted by the testatrix.

If it were the intent of the testatrix to cut Wormell off
from her bounty, would she not have done the same with
his interest as she did with some others, and expressly revoke
her bequest to him, is the query of counsel, to which they
return response that undoubtedly she would have so done,
if that had been her deliberate design; but it will be asked
in turn, Why did she not, then, carry him into the codicil?
To this self-propounded interrogatory, counsel answer, that
he may have been omitted from the codicil by oversight.

If mention were unnecessary, omission should be harmless,
and conjecture useless.

Counsel aver their belief that it may have been the in-
tention of testatrix to carry him into the codicil and to thus
make him a sharer in her bounty in equal proportion with
the other residuary legatees. If such were her intention,
she never executed it, and how can he benefit by her failure
to execute such fancied purpose? But is her omission,
caused by an oversight, to be construed as an intention to
deprive him entirely from sharing in her bounty? Or, con-

tinue counsel, it may have been her actual intention to give Eugene Wormell and Lettie Wormell Byron two-fiftieths of the residue, and to divide the remaining forty-eight—fiftieths · among the residuary legatees of the codicil; but all this is indulging the imagination to no practical benefit, for, as counsel finally admit, in any . event we must take her will as she made it and not as we fancy she might, could, would, or should have made it.

All of these speculations are, in a manner, interesting and some of them abstruse, but to this complexion do we come at last: Was there any intent at the time of making the codicil in the mind of the testatrix that Eugene Wormell should receive any part of the residue of her estate?

To resolve this problem we must resort to the will and codicils and confine ourselves to their terms.

By the former will one-fiftieth of the residue was bequeathed to Eugene Wormell of Livermore, Maine, and another fiftieth to Eugene Wormell of Seattle, Washington; by the latter every fiftieth is given to some person other than Eugene Wormell of Livermore, Maine, and in regard to the other Eugene, it is explained that he died in the interval between the dates of the two transactions. No mention is made in the codicil of Eugene Wormell of Livermore, Maine, nor of Lettie Wormell, of Colorado, who had died on the 6th of October, 1892, five years prior to the date of the latter instrument. An inspection of the two papers shows that in preparing the codicil the order of the will was closely pursued; the variations serve to indicate an adherence to the text of the original; and in going down the line she passed over the names of ''Eugene Wormell of Livermore, Maine, and Lettie Wormell of Colorado,'' to whom she had given each one-fiftieth of the will, in nominal juxtaposition, and the necessary inference is that this departure from the sequence of names was designed and that she meant to omit them from her bounty.

It is manifest that the distribution of the codicil was intended to be a new one and a substitute for the old, while retaining the general form of the original, but the division was different in fractions, names of donees, and amounts allotted to each and the quantity of residue distributed.

The intent to make a disposition of the residue in fiftieths is clear to the court, and such an intent is inconsistent with the prior bequests made in the will to those whose names were not found in the codicil. The court has no authority to divide the residue under the codicil into fifty-two parts, and assign one part to Eugene Wormell and one part to the children of Lettie Wormell Byron, for to do this would be to alter the disposition of testatrix and make for her a new will, which is beyond judicial power.

The claim of petitioner is inconsistent, in my judgment, with the plan of the testatrix, as outlined in the codicil, and no reasonable construction can reconcile the two propositions where the repugnance is so evident, and she herself has said that in any respect in which this codicil should conflict with the provisions of her former will, she fully intended that the codicil should control, and this court is, finally, of opinion that it is executing her intention in letter and spirit by denying the prayer of petitioner, and it is so ordered.

The Principal Case was affirmed by the supreme court in 141 Cal. 485, 75 Pac. 44. The general rule is, that a codicil does not disturb the will, except so far as inconsistent with it or in terms or by necessary intendment revokes it: Estate of McCauley, 138 Cal. 432, 71 Pac. 512.